**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RaShawn Ciers,

Plaintiff,

v.

David Steiner, Postmaster General, United States Postal Service, in his official capacity,

Defendant.
_______________________________/

Civil No. 25-13334

Hon. Jonathan J.C. Grey

Mag. Judge Kimberly G. Altman

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS (ECF No. 15) AND DENYING AS MOOT PLAINTIFF'S MOTION FOR ORAL ARGUMENT AND PROMPT DISPOSITION OF DEFENDANT'S MOTION TO DISMISS (ECF No. 18)**

On October 20, 2025, pro se Plaintiff RaShawn Ciers filed this action against Defendant United States Postmaster General, David Steiner, alleging disability discrimination and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. §§ 791, 794. (ECF No. 1.)

On January 27, 2026, Steiner moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) on two grounds: (1) Ciers failed to exhaust his administrative remedies because he elected to proceed before the Merit Systems Protection Board ("MSPB"), a binding election

of forum that required him to raise his discrimination and retaliation claims there—which he did not—and nullified his later-filed Equal Employment Opportunity ("EEO") complaint, and (2) even if the Court considers the EEO complaint, the claims are untimely where they accrued in June 2011—almost 13 years before Ciers contacted an EEO counselor. (ECF No. 15.) The motion is fully briefed.[1] (ECF Nos. 16, 17.)

For the reasons set forth below, the Court finds that neither ground supports dismissal, and it **DENIES** the motion to dismiss.

# I. BACKGROUND

## A. The injury, removal, and 2011 restoration notice

Ciers worked for the United States Postal Service ("USPS") as a mail handler. (ECF No. 1, PageID.9.) On December 14, 2001, after Ciers sustained a back injury, the U.S. Department of Labor's Office of Workers' Compensation Programs ("OWCP") accepted a compensable spine injury and awarded Ciers wage-loss compensation under the Federal Employees' Compensation Act ("FECA"). (*Id.*)

[1] The Court finds that oral argument will not aid in its disposition of the motion; therefore, it dispenses with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f). The Court also **DENIES AS MOOT** Ciers's motion for oral argument and prompt disposition of the pending motion to dismiss. (ECF No. 18.)

Beginning in 2007, the USPS Office of Inspector General ("OIG") investigated Ciers's representations about his physical condition and his concurrent private-sector work. (ECF No. 15-2, PageID.101.) In 2009, USPS issued a notice of removal for failure to report earned income to the Department of Labor and misrepresentation of his physical condition. (*Id.* at PageID.102.) The removal became effective August 20, 2010, after an arbitration decision upheld it. (*Id.*)

On May 31, 2011, USPS issued Ciers a formal restoration and reemployment notice for a call center agent position in Detroit, effective June 11, 2011, consistent with his medical restrictions. (ECF No. 1, PageID.10, 29.) The notice directed Ciers to report for training on June 13, 2011. (*Id.*) Ciers reported and worked on June 13 and June 14, 2011. (*Id.* at PageID.10.) On June 15, 2011, after an aggravation of his accepted medical condition, Ciers's treating physician ordered him off the call center work, and Ciers submitted a recurrence claim to OWCP with supporting medical documentation. (*Id.*)

A few days later, on June 20, 2011, a USPS health and resource management manager emailed a personnel processing specialist who had been handling the reemployment paperwork: "At this time, please

suspend any initiatives related to this particular employee. I will reinstate my request at a later date if necessary." (ECF No. 1, PageID.33; ECF No. 16, PageID.174.) Ciers alleges that this instruction was internal only and never communicated to him or to OWCP. (ECF No. 1, PageID.10.) Ciers further alleges that USPS never issued a Standard Form 50 ("SF-50") either effectuating or rescinding the restoration, and that he was never paid for the two days he worked. (*Id.*) Ciers asserts that he first discovered the June 20, 2011 email in June 2024, through discovery in his MSPB proceeding. (ECF No. 16, PageID.165.)

### B. The intervening years and the February 2024 CA-7 notation

The parties paint a different picture of the following 13 years. Ciers alleges that during that period, he reasonably believed that he was actively restored based on the agencies' own actions, or lack thereof. (ECF No. 1, PageID.12.) Specifically, Ciers points to: (1) the formal restoration notice; (2) his reporting for duty and working on June 13 and June 14, 2011; (3) USPS's failure to send him any SF-50 or termination notice; (4) the agency's continued completion of agency-specific portions of his CA-7

wage-loss forms,[2] which never stated that he was no longer on the rolls; (5) OWCP's continued administration of his benefits; and (6) a vocational rehabilitation status report listing him as "Employed with Previous Employer." (*Id.* at PageID.11, 12; ECF No. 16, PageID.166 n.8, 190.)

USPS emphasizes different features of the same period to show that Ciers should have known he was not a USPS employee well before 2024. USPS notes that: (1) it did not pay Ciers for the two days he worked in June 2011, nor did he receive any wages after June 2011; (2) Ciers did not receive any health, life, leave, or retirement benefits for 13 years; (3) Ciers could have accessed his personnel file through ordinary channels to check his employment status but did not; and (4) as Ciers himself recognizes, OWCP benefit eligibility does not depend on agency personnel status. (ECF No. 15, PageID.91–92; ECF No. 1, PageID.9.)

The parties, however, agree on the trigger for this litigation: in February 2024,[3] the agency-completed portion of a CA-7 form stated that

---

[2] The CA-7 form is an official U.S. Department of Labor document used by federal employees under FECA to request wage-loss compensation when missing work due to a work-related injury or illness.

[3] The parties cite slightly different dates for the February 2024 CA-7 form. USPS's brief refers to February 14, 2024 as the relevant date (ECF No. 15, PageID.89), while Ciers's complaint identifies February 21, 2024. (ECF No. 1, PageID.5.) The difference

Ciers was "not on our Rolls; separation date was 08/20/2010." (ECF No. 1, PageID.27; *see also* ECF No. 15, PageID.82.) When Ciers inquired, USPS confirmed that he had never been placed back on payroll. (ECF No. 1, PageID.5; ECF No. 15, PageID.91.)

### C. The administrative proceedings and this lawsuit

On March 20, 2024, Ciers filed an appeal with the MSPB alleging that USPS failed to restore or reemploy him in 2011 following the recurrence of his back injury. (ECF No. 15-2, PageID.100.) The appeal sought restoration under FECA and 5 C.F.R. Part 353 (*id.*) but did not allege discrimination or retaliation, as USPS asserts and Ciers does not dispute. (ECF No. 15, PageID.83, 85; ECF No. 16, PageID.155.)

On March 30, 2024, Ciers initiated contact with an EEO counselor and filed a formal EEO complaint on July 3, 2024. (ECF No. 1, PageID.13.) The agency dismissed the complaint as untimely under 20 C.F.R. § 1614.107(a)(2) and, separately, as an impermissible collateral attack on OWCP proceedings. (ECF No. 15-4, PageID.146, 148–149.)

On January 16, 2025, an MSPB administrative judge dismissed

---

between the two is immaterial since Ciers satisfied the 45-day EEO counselor-contact date requirement regardless. *See infra* Section III.B.

Ciers's appeal for lack of jurisdiction. (ECF No. 15-2, PageID.100–101.) The administrative judge reasoned that Ciers had been removed for cause substantially unrelated to his compensable injury, that a removal for cause negates restoration rights, and that Ciers therefore failed to make a non-frivolous allegation of MSPB jurisdiction over his restoration claim. (*Id.* at PageID.101, 104–106.) The administrative judge did not adjudicate a discrimination or retaliation claim. (*Id.*) Ciers filed a petition for review with the full MSPB on February 15, 2025. (ECF No. 15-3, PageID.115.) The petition remains pending, and thus, the initial decision is not yet final. (ECF No. 17, PageID.195.)

Finally, on October 20, 2025, Ciers filed this action, invoking the federal-sector enforcement provision of 42 U.S.C. § 2000e–16(c). Ciers's disability discrimination and retaliation claims arise from the same core events: USPS's decision to halt his reemployment process in June 2011, its failure to issue an SF-50, and its failure to process wages and benefits following the completion of the February 2024 CA-7 form. (ECF No. 1, PageID.12, 15–17.)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a pleading fails to state a claim if its allegations do not support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The plaintiff need not provide "detailed factual allegations" but must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").

Although the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the court need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678–679 (quotation marks and citation omitted). The complaint is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678; *see also 16630 Southfield Ltd. v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) ("The plausibility of an inference

depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct.").

In deciding whether to dismiss a case, a court will generally rely only on the pleadings. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citations omitted). However, the Court may consider exhibits attached to the complaint, public records, and motion to dismiss attachments without converting the motion into one for summary judgment so long as the outside documents are referred to in the complaint and are central to the claims. *Id.* at 680–681 (citation omitted). As such, the Court's consideration of the MSPB and EEO filings attached to the motion to dismiss briefing and referred to in the complaint does not convert the motion into one for summary judgment.[4] *See id.*; *see also* Fed. R. Civ. P. 12(d).

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies

The Court first addresses Steiner's argument that dismissal is warranted because Ciers failed to exhaust his administrative remedies.

---

[4] The Court considers these filings to establish what Ciers filed and when, and what the administrative agencies decided. The Court does not, however, accept contested factual characterizations as true, which Ciers concedes is proper at this juncture. (ECF No. 16, PageID.155, 162.)

A plaintiff must exhaust his administrative remedies before bringing a Rehabilitation Act claim in federal court. *Blume v. Potter*, 289 F. App'x 99, 103 (6th Cir. 2008) (citation omitted). Exhaustion runs through the employing agency's EEO process, which begins with counselor contact within 45 days of the date of the matter alleged to be discriminatory. 29 C.F.R. § 1614.105(a)(1). However, another avenue exists for federal employees. The Civil Service Reform Act of 1978 ("CSRA") "establishes a framework for evaluating personnel actions taken against federal employees" and "provides graduated procedural protections depending on an action's severity." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012).

The CSRA and federal regulations set out special procedures that govern cases in which "an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination," also referred to as "mixed case[s]." *Id.* at 44–45 (emphasis in original) (citation omitted); *see also* 5 U.S.C. § 7702(a)(1); 29 C.F.R. § 1614.302(a)(2) ("A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of . . .

disability[.]"). An employee may file a mixed case complaint with the employer-agency's EEO office or a mixed case appeal with the MSPB, "but not both"—"whichever is filed first shall be considered an election to proceed in that forum." 29 C.F.R. § 1614.302(b); *see Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 470 (6th Cir. 2003) (citations omitted). The election has teeth. An employee who chooses the MSPB must pursue his discrimination claims there, and the Sixth Circuit has concluded that claims required to be exhausted before the MSPB cannot be revived later through an EEO complaint. *Burden v. U.S. Postal Serv.*, 345 F. App'x 972, 973 (6th Cir. 2009).

Steiner argues that Ciers elected to proceed with the MSPB on March 20, 2024, never raised discrimination claims there, and therefore has not exhausted his administrative remedies. That argument, however, presupposes that the March 2024 filing was a mixed case appeal. The record before the Court, including Steiner's own exhibit and briefing, establishes that it was not, for two independent reasons.

First, a mixed case appeal is defined by its content: it must allege that an appealable action was "effected, in whole or in part, because of discrimination." 29 C.F.R. § 1614.302(a)(2). It is undisputed that Ciers's

MSPB appeal alleged a failure to restore under FECA and 5 C.F.R. Part 353 and did not allege discrimination or retaliation. (*See* ECF No. 15, PageID.83, 85; ECF No. 16, PageID.155.) Moreover, the administrative judge's decision reflects a restoration-only appeal adjudicated solely on jurisdictional grounds. (ECF No. 15-2, PageID.100.)

Second, and independently, a mixed case requires an underlying action that is appealable to the MSPB. 5 U.S.C. § 7702(a)(1)(A). The administrative judge held there was none: because Ciers was removed for causes substantially unrelated to his compensable injury, he failed to non-frivolously allege any entitlement to restoration, and the MSPB lacked jurisdiction. (ECF No. 15-2, PageID.101, 104–106.)

The regulation anticipates exactly this posture. When an employee files an appeal with the MSPB "and the MSPB dismisses [the appeal] for jurisdictional reasons," the agency must notify him of the right to contact an EEO counselor, and "[t]he date on which the person filed his or her appeal with MSPB shall be deemed to be the date of initial contact with the counselor." 29 C.F.R. § 1614.302(b). A jurisdictional dismissal, in other words, routes the employee back into the EEO process if he so chooses; it does not extinguish that process. *See Sloan v. West*, 140 F.3d

1255, 1261 (9th Cir. 1998) (explaining that when the MSPB dismisses a complaint and/or claims for lack of jurisdiction, it then advises the employee to pursue discrimination claims through the agency EEO process). Applying the same logic, the Ninth Circuit recently held in *Crowe v. Wormuth* that an employee "did not fail to exhaust" discrimination claims before the MSPB where the MSPB "lacked jurisdiction to consider them;" such claims "must instead be exhausted through the EEO process." 74 F.4th 1011, 1033 (9th Cir. 2023). It would make little sense to fault Ciers for failing to present discrimination claims to a forum that had no jurisdiction to adjudicate the case to which those claims would have attached.

The authorities upon which Steiner relies do not hold otherwise because the MSPB in each of those cases had jurisdiction to adjudicate the employee's discrimination claims. For instance, in *Burden*, the employee litigated his removal before an MSPB administrative judge who reached, and rejected, his discrimination allegations. 345 F. App'x at 973. Only in that posture did the Sixth Circuit affirm the district court's holding that the plaintiff failed to exhaust his discrimination and retaliation claims because he did not assert them before the MSPB and

that his EEO complaint is not "a basis for resurrecting for purposes of judicial review claims that were required to be, but were not, exhausted before the MSPB." *Id.*

Similarly, in *Stoll v. Principi*, the plaintiff initially filed an appeal with the MSPB, and as such, the First Circuit held that the formal EEO complaint she filed during the pendency of that appeal was "a nullity." 449 F.3d 263, 266 (1st Cir. 2006). However, in *Stoll*, unlike here, the MSPB presumably had jurisdiction such that the plaintiff was effectively "testing the waters in two different administrative fora." *Id.* at 264. None of the cases that Steiner cites[5] held that an MSPB appeal dismissed at the threshold for lack of jurisdiction—even if it did not include a discrimination allegation—forecloses the EEO route.

Even if the March 20, 2024 filing was a mixed case appeal of the same matter as this action, the CSRA still authorizes this suit. If, "at any time after . . . the 120th day following the filing of an appeal with the [MSPB] under subsection (a)(1)," there is "no judicially reviewable action," the employee is "entitled to file a civil action." 5 U.S.C. §

[5] Steiner cites to *Coffman v. Glickman*, 328 F.3d 619 (9th Cir. 2003) (ECF No. 15, PageID.88); however, it is a United States Court of Appeals for the Tenth Circuit decision and the accurate citation is 328 F.3d 619 (10th Cir. 2003).

7702(e)(1)(B); *see* 29 C.F.R. § 1614.310(g). The D.C. Circuit has explained that this provision opens the district court's doors "if the MSPB fails to render a judicially reviewable decision within 120 days from the filing of a mixed case appeal," so long as the complainant has not abandoned the administrative process. *Butler v. West*, 164 F.3d 634, 638–639 (D.C. Cir. 1999). The Sixth Circuit has recognized the same. *Valentine-Johnson v. Roche*, 386 F.3d 800, 813 (6th Cir. 2004); *see also Seay*, 339 F.3d at 470–472.

Here, 120 days from March 20, 2024 was July 18, 2024. No judicially reviewable action existed then, and none exists now: the initial administrative decision was issued on January 16, 2025, and Ciers's timely petition for review is still pending, preventing the initial decision from becoming final. (ECF No. 15-2, PageID.106; ECF No. 15-3, PageID.115; ECF No. 17, PageID.195–196.) By Steiner's own account then, Ciers was statutorily entitled to file a civil action at any point after July 18, 2024, and his October 20, 2025 civil complaint required no completed MSPB adjudication.

One way or another, Steiner's failure to exhaust argument fails. Either the appeal was not a mixed case appeal, and there was no election,

or it was, and the 120-day rule authorized suit in this Court. Accordingly, the motion to dismiss is **DENIED** on this basis.

### B. Timeliness of Claims

Next, the Court addresses Steiner's argument that even if the Court considers the EEO complaint, Ciers's EEO claims must be dismissed as untimely.

A federal employee must "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). If an employee fails to do so, the agency and district court must dismiss the complaint. *Horton v. Potter*, 369 F.3d 906, 910 (6th Cir. 2004).

The limitations clock ordinarily begins when "the plaintiff has a complete and present cause of action." *Green v. Brennan*, 578 U.S. 547, 554 (2016) (internal quotation marks and citation omitted). Discrete discriminatory acts occur on the day they happen, and "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). For claims contesting an employer's decision, the period begins to run once

the employer "makes and communicates a final decision to the employee[,]" and the employee "is aware or reasonably should be aware of the employer's decision." *EEOC v. United Parcel Serv., Inc.*, 249 F.3d 557, 561–562 (6th Cir. 2001).

Where no decision was communicated, constructive knowledge can suffice: the 45-day period begins when the employee "reasonably should have been aware" of the decision, *Lord v. Holder*, 568 F. App'x 435, 437 (6th Cir. 2014), or once he "reasonably should have suspected discrimination (or retaliation), but before all of the facts that would support a charge become apparent," *Taylor v. Donahoe*, 452 F. App'x 614, 618 (6th Cir. 2011). A plaintiff has reason to know of his injury when reasonable diligence would have discovered it. *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934, 939 (6th Cir. 1999) (citing *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). At the pleading stage, plausible, non-conclusory allegations that the plaintiff neither knew nor had reason to know of his injury must be accepted as true. *Snyder-Hill v. Ohio State Univ.*, 48 F.4th 686, 701, 705–707 (6th Cir. 2022) (reversing a Rule 12(b)(6) dismissal on limitations grounds where the plaintiffs plausibly alleged that they lacked reason to know of defendant's conduct).

The complaint pleads timely EEO contact. Ciers alleges that the first repudiation of his restoration surfaced on February 14, 2024, through the CA-7 notation, and he initiated counselor contact on March 30, 2024—within 45 days. (ECF No. 1, PageID.3–5, 13, 27.) The complaint does not concede a 2011 accrual; it pleads a 2024 discovery theory resting on non-communication and on contrary signals from USPS itself. Moreover, Steiner accepts, for purposes of the motion, that the June 20, 2011 restoration halt was never communicated to Ciers. (ECF No. 15, PageID.89–90.) Thus, the Court asks whether Ciers reasonably should have known long before 2024 that USPS had not restored him. *See United Parcel Serv.*, 249 F.3d at 561–562; *see also Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012) (finding that when "the allegations in the complaint affirmatively show that the claim is time-barred," "dismissing the claim under Rule 12(b)(6) is appropriate").

Ciers worked two days in June 2011 and was never paid, which Steiner calls an "unequivocal indication" that USPS did not return Ciers to the rolls. (ECF No. 15, PageID.91.) For roughly 13 years, Ciers received no wages and none of the health, life, leave, or retirement benefits he now seeks as damages. (ECF No. 1, PageID.18.) He continued to receive

workers' compensation benefits. (*Id.* at PageID.16–18.) Moreover, according to Steiner, Ciers failed to inquire into his payroll or personnel status between 2011 and 2024, even though his personnel file was available electronically. (ECF No. 15, PageID.91–92.) And when he finally asked in 2024, the agency answered promptly. (*Id.* at PageID.91.) Taken in isolation, working without pay and not receiving wages or benefits would ordinarily indicate to a reasonable employee that he was not restored. *See Tolbert*, 172 F.3d at 939 (a plaintiff has reason to know of his injury when reasonable diligence would have discovered it).

But the complaint supplies context that blunts the negative inference at this stage. The day after Ciers's second shift, his physician ordered him off the call center work; OWCP accepted the recurrence and resumed administering wage-loss compensation. (ECF No. 1, PageID.10; ECF No. 16, PageID.160.) For an injured federal worker in that posture, the absence of agency payroll wages does not clearly indicate that he was not restored because FECA wage-loss compensation runs through OWCP while the employee ordinarily sits in a non-pay status with his employing agency. (ECF No. 16, PageID.163–165.) A reasonable person in Ciers's position could have understood himself to be a restored employee who

had returned to compensable-injury status and could have viewed two days of missing pay as an administrative loose end rather than an indication that his restoration was cancelled. The complaint also alleges affirmative signals, spanning years, that pointed toward restoration: the restoration notice itself, with an official processing date; the agency's own CA-7 completions, which never flagged Ciers's status; a vocational rehabilitation report classifying him as "Employed with Previous Employer"; and the absence of any SF-50 or termination correspondence. (ECF No. 1, PageID.10–13.)

Whether Ciers's understanding remained reasonable as months became years is a serious question. But it is a question best reserved after the parties have a chance to develop the record with discovery—for instance, it remains unclear what Ciers received from the different agencies and what he could access during the intervening years. At this juncture, Ciers adequately alleges that he lacked reason to know that his restoration was cancelled.[6] *See Snyder-Hill*, 48 F.4th at 705–707.

For the reasons above, the Court **DISMISSES** the motion as to

[6] Steiner also argues that Ciers is not entitled to equitable tolling. The Court need not reach this argument because it finds that Sears timely filed his EEO claims.

Steiner's untimeliness argument and **DENIES AS MOOT** Ciers's request to amend (*see* ECF No. 16, PageID.171) because his claims survive.[7]

## IV. CONCLUSION

Accordingly, and for the reasons above, **IT IS ORDERED** that Steiner's motion to dismiss (ECF No. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that Ciers's motion for oral argument and prompt disposition of defendant's pending motion to dismiss (ECF No. 18) is **DENIED AS MOOT**.

**SO ORDERED**.

**s/Jonathan J.C. Grey**
Honorable Jonathan J.C. Grey
United States District Judge

Date: August 13, 2026

---

[7] Ciers argues that "[e]ven if Defendant disputes whether events in 2011 were actionable, USPS's 2024 repudiation of Plaintiff's personnel status and its 2024–2025 refusals to correct official records constitute discrete employment actions that independently trigger timeliness analysis." (ECF No. 16, PageID.166.) On reply, Steiner argues that Ciers's 2024–2025 requests for restoration and correction of records cannot create new discrimination claims. (ECF No. 17, PageID.200 (citing *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 628 (2007); *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1237 (6th Cir. 1980)).) The Court need not decide whether the 2024 and 2025 events are independently actionable discrete acts because the halted 2011 restoration survives the motion to dismiss for the reasons discussed above.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 20, 2026.

**s/ S. Osorio**
Sandra Osorio
Case Manager